## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARBOR BUSINESS COMPLIANCE CORPORATION, | |
| Plaintiff/Counterclaim-Defendant | Civil Action No. 5:23-cv-00802-JFL |
| vs. | Judge:     Hon. Joseph F. Leeson, Jr. |
| FIRSTBASE.IO, INC., | **FILED UNDER SEAL** |
| Defendant/Counterclaim-Plaintiff | |

## DEFENDANT/COUNTERCLAIM PLAINTIFF FIRSTBASE.IO, INC'S MOTION TO STRIKE AND/OR MOTION IN LIMINE TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF GREG URBANCHUK

Defendant FIRSTBASE.I0, INC. ("Defendant/Counterclaim Plaintiff" or "Firstbase"), by and through its undersigned counsel, hereby moves this Court to strike and/or exclude the expert report and testimony of Gregory Urbanchuk. In support of this motion, Firstbase incorporates the arguments and law set forth in its accompanying brief.

A proposed form of Order has been contemporaneously filed herewith.

Dated: November 7, 2023                    Respectfully Submitted,

**DILWORTH PAXSON LLP**

/s/*James J. Rodgers*
James J. Rodgers (PA Bar # 21635)
*jrodgers@dilworthlaw.com*
David A. Rodkey (PA Bar# 325698)
drodkey@dilworthlaw.com
Matthew T. Gardella (PA Bar #331833)
mgardella@dilworthlaw.com
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Tel.: +1 215 575-7143

Christine Hanley (*admitted PHV*)
*chanley@chanleylaw.com*
2041A NW 60th Street
Seattle, WA 98107
Tel.: +1 304-606-3705

*Attorneys for FIRSTBASE.IO, INC.*

## <u>CERTIFICATE OF NON-CONCURRENCE</u>

Pursuant to Local Rule 7.1, the undersigned counsel hereby certifies that, on November 7, 2023, he was advised by Counsel for Plaintiff that they do not concur in the motion.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 7, 2023

<div style="margin-left: 40%;">

*/s/ James J. Rodgers*
James J. Rodgers

</div>

## CERTIFICATE OF SERVICE

I, James J. Rodgers, Esquire certify that on the 7th day of November 2023, I caused a true and correct copy of Defendant/Counterclaim Plaintiff Firstbase.Io, Inc.'s Motion To Strike And/Or Motion In Limine To Exclude The Expert Report And Testimony Of Gregory Urbanchuk and supporting documents thereto to be served via email upon counsel of record as follows:

<div align="center">

Matthew Faranda-Diedrich
mfd@rccblaw.com
Julie M. Latsko
jlatsko@rccblaw.com
David S. Hollander
dhollander@rccblaw.com
Robert Toland, II
rtoland@rccblaw.com
Royer Cooper Cohen Braunfeld LLC
Two Logan Square
100 N. 18th Street, Suite 710
Philadelphia，PA 19103

</div>

Dated: November 7, 2023                    **DILWORTH PAXSON LLP**

/s/*James J. Rodgers*
James J. Rodgers (PA ID # No. 21635)

*Attorney for FIRSTBASE.IO, INC.*

123900024-1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HARBOR BUSINESS COMPLIANCE CORPORATION, | |
| Plaintiff/Counterclaim-Defendant | Civil Action No. 5:23-cv-00802-JFL |
| vs. | Judge:    Hon. Joseph F. Leeson, Jr. |
| FIRSTBASE.IO, INC., | |
| Defendant/Counterclaim-Plaintiff | **FILED UNDER SEAL** |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF GREG URBANCHUK**

Defendant Firstbase.IO, Inc. ("Firstbase" or "Defendant"), by and through its undersigned counsel, respectfully submits the following Brief in Support of its Motion *In Limine* to Exclude the Expert Report and Testimony of Gregory J. Urbanchuk (the "Urbanchuk Report"),[1] plaintiff Harbor Business Compliance Corporation's ("Harbor" or "Plaintiff") proffered expert witness for economic damages.

## I.    INTRODUCTION

Harbor's damages report suffers from flaws that are so fundamentally fatal to its reliability and utility that the Court should exclude it under Federal Rule of Evidence 702. Most significantly, Harbor's damages opinion simply *assumes,* without analysis, that all of Firstbase's profit derived from the products that Harbor contends are at issue in this case, Firstbase Agent Light, Firstbase Agent Autopilot, Firstbase Agent Payroll, In-App Purchases, and Incorporation Sales, is 100% attributable to Firstbase's alleged misconduct. Mr. Urbanchuk attempts to justify

---

[1] A true and accurate copy of the Urbanchuk Report is attached hereto as **Exhibit A**.

his failure to perform any analysis whatsoever by asserting the incorrect assumption that "it is Defendant's burden to establish apportionment, to the extent appropriate," completely ignoring, among other things, that the equitable remedy of disgorgement requires a casual showing of which gains came as a result of the alleged misconduct. These material flaws prevent Harbor's damages opinion from meeting the requirements of Rule 702 and/or unfairly prejudice Firstbase in violation of Federal Rule of Evidence 403.

II.    **STATEMENT OF FACTS**

Firstbase is a software and service company that provides an "all in one" online platform to assist business owners in creating, growing, and maintaining their business entities. Since roughly 2019, Firstbase has provided incorporation services for its clients' businesses. Harbor similarly provides a variety of "compliance solutions for companies of all types and sizes." Firstbase and Harbor executed a Partnership Agreement on May 28, 2022. The Parties worked to launch the Firstbase Agent product, and subsequently operated together under the Partnership Agreement until several disputes arose regarding the terms and scope of the Agreement, and the Parties were unable to agree on how to clarify their relationship going forward. On November 2, 2022, Firstbase sent a letter expressing its intent to terminate the Agreement. Between November 2022 and January 2023, Firstbase placed fewer new orders with Harbor and then stopped altogether. Consistent with its expressed intent throughout the relationship, Firstbase expanded its product offerings and the number of states for which it performed services, albeit without Harbor's services.

On March 1, 2023, Harbor instituted this action claiming, among other things, breach of contract and misappropriation of trade secrets under both the Pennsylvania Uniform Trade Secrets Act ("PUTSA") and the federal Defend Trade Secrets Act ("DTSA"). Harbor, through

the expert opinions of Dr. Ricardo Valerdi, have identified eight alleged trade secrets purportedly misappropriated by Firstbase.

The first four trade secrets asserted can all generally be grouped together as trade secrets related to workflows. Trade Secret #5 is identified as "Entity Manager Dashboard." Trade Secret #6 is identified as the "Jurisdictional Database." Trade Secret #7 is identified as "Registered Agent Application Programming Interface." Id. Trade Secret # 8 is identified as a "Process Map." SUMF ¶ 113. Dr. Valerdi identifies the hand-drawn sketch as the origin of this alleged trade secret.

On August 7, 2023, Gregory Urbanchuk ("Urbanchuk"), Harbor's expert with respect to economic damages, submitted Plaintiff's Expert Report on Damages. On September 26, 2023, Urbanchuk submitted his Supplemental Expert Report. The August 7th Report was not a completed report, and was later supplemented by the September 26th Report, which essentially superseded the former. For this reason, the September 26th Report is hereinafter exclusively referred to as the "Urbanchuk Report" and is the sole report analyzed in this motion.

The Urbanchuk Report purports to quantify the "monetary relief to which [Harbor] is entitled" due to the alleged misconduct of Firstbase. Specifically, Mr. Urbanchuk opines on monetary relief to which Plaintiff is supposedly entitled on the basis of (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) misappropriation of trade secrets under Pennsylvania law ("Pennsylvania Uniform Trade Secret Act" or "PUTSA"); (4) misappropriation of trade secrets under federal law ("Defend Trade Secrets Act" or "DTSA"); and (5) common law unfair competition. [Urbanchuk Report at 2-3].

With respect to (1) and (2) ("the Breach Claims"), Mr. Urbanchuk's expert opinion on damages is made "by reference to the Outstanding Guaranteed Minimums due under the

Partnership Agreement and addenda plus harbor Compliance's Unpaid Invoices." [Urbanchuk Report at 3]. He states that "in [his] opinion" the damages for the Breach Claims amounts to $███████, calculated as $██████ for "Guaranteed Minimums" plus $█████ for "Unpaid Invoices."

In evaluating Harbor's purported damages under DTSA and PUTSA ("Trade Secret Claims"), Mr. Urbanchuk relied on portions of each statute in determining the appropriate measure of relief. [*Id.*]. Specifically, Mr. Urbanchuk cited the following in his Report:

> damages for actual loss caused by the misappropriation of the trade secret; and damages for **any unjust enrichment <u>caused by</u> the misappropriation of the trade secret** that is not addressed in computing damages for actual loss; or
>
> in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret.

18 U.S.C. § 1836(b)(3)(B) (emphasis added).

> … [A] complainant is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the **unjust enrichment <u>caused by</u> misappropriation t**hat is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

12 Pa. C.S.A. § 5304(a) (emphasis added).

Mr. Urbanchuk quantified monetary relief for the Trade Secrets Claims **only** "based on a disgorgement of [Firstbase's] profits." [Urbanchuk Report at 3]. Mr. Urbanchuk expressly stated that he did not conduct a lost profits or reasonable royalty analysis for the Trade Secret Claims. [*Id.* at 14]. As set out in the Report, he calculated disgorgement damages by adding (1) *all* profits earned by Firstbase from its Firstbase Agent and Firstbase Start products between January 1,

2023 and July 2023 ("Historical Profits"), and (2) the present value of *all* of Firstbase's prospective profits for those same products from August 1, 2023 to March 28, 2027 ("Prospective Profits"). [Urbanchuk Report at 3, 14, 20, Exhibit 1]. The amount of disgorgement damages set forth by Mr. Urbanchuk equals $███████, equal to $███████ for Historical Profits, and $███████ for Prospective Profits. [*Id.* at 19].[2]

## III.    STATEMENT OF QUESTIONS INVOLVED

1.    Should the Court, pursuant to Fed. R. Evid. 702, exclude Plaintiff's expert on damages, Gregory Urbanchuk, from testifying because he – in contradiction with both established law and the factual record – improperly assumed that *every dollar* of profit earned by Firstbase is attributable to the alleged misappropriation?

**SUGGESTED ANSWER:** YES

2.    Should the Court preclude Mr. Urbanchuk from testifying regarding disgorgement of Firstbase's "prospective" profits, because unjust enrichment damages are not properly comprised of future profits as a matter of law?

**SUGGESTED ANSWER:** YES

---

[2] Mr. Urbanchuk also calculated damages for common law unfair competition using the same disgorgement analysis and arrived at damages in the same amount as for the Trade Secret Claims.

3.      In the alternative, even if the Court holds that Mr. Urbanchuk's disgorgement analysis is not excludable, should the Court preclude Mr. Urbanchuk from testifying to the jury regarding disgorgement damages because disgorgement is an equitable remedy for which there is no Seventh Amendment right to a jury, and that the issue of disgorgement damages must be considered by the Court and not the jury?

**SUGGESTED ANSWER:** YES

4.      In the event the Court limits Mr. Urbanchuk's disgorgement testimony, should the Court preclude Mr. Urbanchuk from testifying regarding the Breach Claims because he offers only simple arithmetic that does not required specialized knowledge and is not helpful to the jury?

**SUGGESTED ANSWER:** YES

## IV.    <u>SUMMARY OF ARGUMENT</u>

Defendant Firstbase.IO has been in the business of providing incorporation services since 2019.  Between 2019 and early 2022, Firstbase had successfully incorporated well-over ▓▓▓▓ customers, and in April 2022 was incorporating approximately ▓▓▓ per month. Despite the undisputed fact that Firstbase has long known how to provide incorporation services, a fact that has been known to Harbor since the parties began negotiating in early 2022, Harbor's damages expert boldly assumes that every single dollar of profit Firstbase brings in through the provision of incorporation services is an ill-gotten gain. This conclusion ignores glaringly obvious alternative explanations that a reliable expert would consider – such as the possibility that Firstbase can earn revenue from incorporation services, as it has in the past, without the misappropriation of any alleged trade secret.

6

Mr. Urbanchuk also ignores other obvious facts that a reliable expert would consider before reaching the conclusion that a company should be required to cede all of its revenue to another. In his analysis, Mr. Urbanchuk overlooks his own admission that the value conferred by the alleged trade secrets is marked primarily be efficiency (and not knowledge of how to provide the services in the first place), and that most of the information required to perform incorporation and registered agent services is undisputedly public (such that another company in the industry like Firstbase could eventually learn how to perform the services even without misappropriating anything). Rather than confronting these issues, Mr. Urbanchuk takes the easy road and merely assumes that all of Firstbase's profits belongs to Harbor. Mr. Urbanchuk's overly simplistic analysis and myriad oversights raise a serious concern that Mr. Urbanchuk simply did not "give more than fleeting thought to numerous matters that are relevant to a report on unjust enrichment." *KW Plastics v. U.S. Can Co.*, 131 F. Supp. 2d 1289, 1295 (M.D. Ala. 2001).

Mr. Urbanchuk's attempt to seek shelter in the representation made by Harbor's counsel to him, that it is "Defendant's burden to establish apportionment" is unavailing. In trade secret cases, experts, separate and apart from legitimate issues of apportionment, must separate profits or losses arising from the defendant's alleged misconduct from profits or losses arising from perfectly lawful conduct. *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir. 1992) (Posner, J.). Harbor's evocation of apportionment does not relieve it of its burden to prove causation. Indeed, the Third Circuit has held that in determining disgorgement, the plaintiff bears the initial burden of presenting a "reasonable approximation" of damages.  Mr. Urbanchuk has not done so.

Additionally, Mr. Urbanchuk's testimony with respect to Firstbase's future profits should be excluded because future profits are not properly considered in awarding damages for unjust

enrichment. *FinancialApps, LLC v. Envestnet, Inc.*, No. CV 19-1337-GBW-CJB, 2023 WL 6037242 at *9 (D. Del. Sept. 13, 2023). As explained below, unjust enrichment damages consider *past* benefits *conferred* upon a defendant. *PPG Indus. Inc v. Jiangsu Tie Mao Glass Co. Ltd*, 47 F.4th 156, 163 (3d Cir. 2022). It would "contravene [the] well-established definition" of unjust enrichment to conclude that future profits are properly awarded here. *Medidata Sols., Inc. v. Veeva Sys.*, Inc., No. 17 CIV. 589 (LGS), 2021 WL 4243309 at *4 (S.D.N.Y. Aug. 25, 2021).

Finally, even if the Court does not exclude all of Mr. Urbanchuk's testimony on disgorgement, he should be precluded from providing that testimony to the jury because disgorgement is an equitable remedy for the Court to decide. *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304 (Fed. Cir. 2018); *Shure Inc. v. ClearOne, Inc.*, No. CV 19-1343-RGA, 2021 WL 4991083 (D. Del. Oct. 27, 2021).

## V.   <u>LEGAL ARGUMENT</u>

### A.  **Standard of Review Under Rule 702**

The text of Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

It is the responsibility of this Court to act as a "gatekeeper"—*i.e.,* to ensure that the expert testimony offered by the parties is at the very least relevant and reliable. *See, e.g., Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 595 (1993); *Kannan-Keril v. Terminx Int'l Inc.,* 128 F.3d 802, 806 (3d Cir. 1997). The proponent of the expert testimony has the burden of demonstrating the requirements of Rule 702 have been met by a preponderance of evidence. *See,*

*e.g., Hamling v. United States,* 418 U.S. 87, 108 (1974); *Oddi v. Ford Motor Co.,* 234 F.3d 136, 146 (3d Cir. 2000); *Maldonado v. Walmart Store #2141, et al.,* , 2011 WL 1790840, at *5 (E.D. Pa. May 10, 2011).

The Third Circuit has stated that Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel Estate of Schneider v. Fried,* 320 F.3d 396, 404 (3d Cir. 2003); *see also Elcock v. Kmart Corp.,* 233 F.3d 734, 745 (3d Cir. 2000) ("In *Daubert,* the Supreme Court directed district court judges to perform a screening function, to insure that evidence presented by expert witnesses is relevant, reliable, and helpful to the jury's evaluation of such evidence." (citations omitted)). Conversely, "[a] trial court ***must exclude*** expert testimony that does not meet these three requirements." *Walmart,* 2011 WL 1790840, at *5 (emphasis added) (citing *Estate of Schneider,* 320 F.3d at 404).

Here, the second and third requirements are at issue. Under the second requirement (reliability), "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 742-743 (3d Cir. 1994). "The Third Circuit has not shied away from excluding expert economic testimony on reliability grounds." *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery,* 179 F.R.D. 450, 459-60 (D.N.J. 1998) (citing various Third Circuit cases). "To be 'reliable,' the testimony must be based on 'methods and procedures of science,' rather than on subjective belief or unsupported speculation." *Walmart,* 2011 WL 1790840, at *5 (quoting *Paoli,* 35 F.3d at 744); *Floorgraphics, Inc. v. News Am. Marketing In-Store Servs., Inc.,* 546 F. Supp. 2d 155, 165 (D.N.J. 2008) ("At a minimum, '[a]n expert opinion is reliable when it is based on sound methodology and 'good grounds.'" (quoting *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999))).

As for the third requirement (fit), an "expert's testimony must be relevant for the purposes of the case and must assist the trier of fact[.]" *Schneider,* 320 F.3d at 404; *Walmart,* 2011 WL 1790840 at *6. In determining if testimony meets the "fit" requirement, a court should examine the expert's conclusions in order to determine if they could reliably flow from the facts of the case and the methodology employed. *Heller v. Shaw Indust. Ins.,* 167 F.3d 146, 153 (3d Cir. 1999); *Walmart,* 2011 WL 1790840, at *6; *see also Floorgraphics, Inc.,* 546 F. Supp. 2d at 174 ("In order to 'be fit,' expert testimony 'must have a traceable and analytical basis in objective fact.'" (quoting *Bragdon v. Abbott,* 524 U.S. 624, 653 (1998))). Where the analytical gap is too great between the data and the opinion proffered, the testimony should be precluded. *General Elec. v. Joiner,* 522 U.S. 136, 146 (1997); *see also Target Market Publ'g, Inc. v. ADVO, Inc.,* 136 F.3d 1139, 1144 (7th Cir. 1997) (affirming exclusion of expert opinion on projected future revenues that relied upon unrealistic assumptions without a basis in the factual record).

Ultimately, "[e]ven if the evidence offered by the expert witness satisfies Rule 702, it may still be excluded if its 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Saldana v. Kmart Corp.,* 260 F.3d 228, 232-33 (3d Cir. 2001) (quoting Fed. R. Evid. 403)). Finally, though a district court has discretion under Rule 702, when expert testimony is admitted at trial and is later found to be deficient under Rule 702, courts of appeal have often reversed the verdict and remanded with a direction to conduct a new trial, whether on liability, damages, or both. *See, e.g., Elcock,* 233 F.3d at 754-58 (holding that trial court committed reversible error and ordering new trial on portions of damages verdict because trial court admitted expert testimony on lost future earnings that was unreliable as it relied upon bald assumptions about the plaintiff's injuries, earning capacity, and life expectancy); *Benjamin v. Peter's Farm Condo. Owners Ass'n*, 820 F.2d 640,

642-43 (3d Cir. 1987) (setting aside jury verdict and remanding for new trial because trial court failed to exclude plaintiff's expert's opinion on lost future earnings, finding that the expert relied on speculative assumptions without "sufficient factual predicates"—specifically, expert's estimation of post-injury earning potential was based directly upon plaintiff's personal assessment of his ability to reenter the work force).

### B. Mr. Urbanchuk should be Precluded from Testifying and his Expert Report Should be Stricken, Because his Report is Unreliable, Unhelpful to the Trier of Fact, and Prejudicial to the Defendants

#### i. The Urbanchuk Report Improperly Assumes Causation between All of the Purported Misconduct and All of the Defendant's Revenue

The Urbanchuk Report is fatally flawed under Rule 702 because it simply assumes that *all* profit earned by Firstbase through its Firstbase Agent Light, Firstbase Agent Autopilot, Firstbase Agent Payroll, In-App Purchases, and Incorporation Sales products (the "Agent and Start Products") can be attributed to Firstbase's alleged misappropriation of Harbor's trade secrets. By assuming without analysis a causal link between the alleged wrongful conduct and all of the alleged economic damages, the Urbanchuk Report does not aid the trier of fact in ascertaining the specific ***amount*** of Firstbase profit that flowed from the purportedly wrongful conduct. This makes a substantial difference because nothing in the record, or even in the citations in Mr. Urbanchuk's own report, support that Firstbase could not have performed registered agent or incorporation services but-for the alleged misconduct, only that the alleged misappropriation aided their efficiency and accuracy.

While Rule 702 permits an expert "in some circumstances, to assume that the defendant's alleged misdeeds caused the plaintiff's loss… it must still establish that it is reasonably certain that the damages it seeks are a consequence of the breach, not some other factor." *Zimmer, Inc. v. Stryker Corp.*, No. 3:14-CV-152 JD, 2018 WL 276324, at *3 (N.D. Ind. Jan. 3, 2018) (internal citations and quotations omitted). If damages experts were free to presume full causation of

damages, then damages experts would serve little or no purpose in civil litigation. See *Elorac, Inc. v. Sanofi-Aventis Canada, Inc.*, No. 14 C 1859, 2017 WL 3592775, at *16 n.6 (N.D. Ill. Aug. 21, 2017) ("[A]ny opinion that purports to measure damages without making a judgment as to which effects stem from the breach and which do not is useless."); *see also Victory Records, Inc. v. Virgin Records America, Inc.*, No. 08 C 3977, 2011 WL 382743 (N.D. Ill. Feb. 3, 2011) (holding that damages opinion on lost profits failed to meet standards of Rule 702 because expert improperly made "causation [] part and parcel of his opinion," where the expert "failed to consider 'obvious alternative explanations'" for the plaintiff's loss.)

Stated differently, a damages opinion that assumes causation of the full amount of damages, without due consideration for other factors, lacks factual support and is speculative, and thus unreliable under Rule 702. *See Elcock,* 233 F.3d at 745 ("[A]n expert's testimony regarding future earnings loss must be accompanied by a sufficient factual foundation before it can be submitted to the jury." (citations and quotations omitted)); Elizabeth A. Evans, et al., *Damages Theories and Causation Issues, in Litigation Services Handbook: The Role of the Financial Expert,* Ch. 4 p. 25 (Roman L. Weil et al. eds., 6th ed. 2017) ("A damages analysis that does not clarify proximate cause link between the defendant's acts and the plaintiff's damages will fail court scrutiny. The court will often label the damages estimates as speculative[.]").

By assuming a causal link between the alleged misappropriation of trade secrets and all of the disgorgement damages (all Firstbase revenue attributable to "Agent and Start Products"), Mr. Urbanchuk's opinion will not aid the trier of fact in ascertaining, with reasonable certainty, what amount of Defendant's profits were earned as a consequence of tortious conduct instead of some other factor/cause. *See AgroFresh Inc. v. Essentiv LLC,* 2019 WL 9514565 at *1 (D. Del.

Oct. 7, 2019) (excluding testimony of damages expert on unjust enrichment damages for trade secret misappropriation because he "fails to connect the trade secret (or any other) issues in the case with his sums of costs."); *see also Sparks v. Consol. Rail Corp.*, CIV. A. 94-CV-1917, 1995 WL 284210, at *1 (E.D. Pa. May 8, 1995) (finding that an "expert can only offer her expert testimony if it aids the factfinder."); *see also MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1353 (Fed. Cir. 2005) (opinion of damages expert excluded because it "did not link any single instance of misconduct to a specific amount of damages.")

The sole remedy asserted by Mr. Urbanchuk for Harbor's trade secrets and unfair competition claim is disgorgement.[3] As defined by Mr. Urbanchuk in his report, disgorgement "sometimes referred to as restitution, unjust enrichment, or ill-gotten gains" is "sometimes referred to as damages but more precisely is a monetary remedy, but not 'damages') and "is focused on the benefit obtained by the defendant." [Urbanchuk Report at 14 (quoting Forensic & Valuation Practice Aid: Calculating Lost Profits (AICPA, 2019) – p. 12)].

In performing this calculation, Mr. Urbanchuk improperly assumed that all of Firstbase's profits for the Agent and Start Products were caused by the misappropriation of the trade secrets. In particular, Mr. Urbanchuk predicates his damages analysis on the "presum[ption] that Firstbase misappropriated all of the foregoing Trade Secrets and Confidential Information in order to offer Firstbase Agent and Start Plans currently available on its website." [*Id.* at 12]. Then Mr. Urbanchuk states that his roughly $ █████ disgorgement figure "is based on information Defendant has produced showing Defendant's profits associated with its Firstbase Agent and Start Plans" without providing any further information as to why the full amount of profit is attributable to the alleged misconduct. [Urbanchuk Report at 20]. A review of Exhibit 1,

---

[3] As stated *supra*, while actual loss (e.g. lost profits) and reasonable royalties are available damages under the DTSA and PUTSA, Mr. Urbanchuk did not conduct an analysis of those theories of recovery.

which Mr. Urbanchuk uses to demonstrate his calculation of the Historical Profits portion of his disgorgement measure, demonstrates that he indiscriminately assigns to Harbor as damages *all* Firstbase profits earned via the sale of the Agent and Start products, essentially concluding without analysis that every dollar earned by Firstbase from those products was a result of misappropriation of the alleged trade secrets.

Mr. Urbanchuk's full-scale assumption of causality is not only unsupported by the record, but is contradicted by facts cited in his own report. First, Urbanchuk's disgorgement figure includes revenue earned by Firstbase through the provision of incorporation services – which fall under the "Firstbase Start" product. [Urbanchuk Report at 12]. For example, Exhibit 1 to the Urbanchuk Report sets out the "historical" profits portion of the disgorgement figure. [*see below,* Urbanchuk Report, Exhibit 1 ▮



Exhibit 1 includes in its calculation "Incorporation Sales," which total $ ▮, representing over ▮ of Firstbase revenue for that period. Mr. Urbanchuk's calculation of the present value of Firstbase's "prospective" profits is also predicated upon the "**actual** average monthly profits" of Firstbase – including those profits attributable to Firstbase Start. [Urbanchuk Report at 23 (emphasis added)]. But critically, Mr. Urbanchuk ignores the undisputed fact that

prior to the Parties' relationship, Firstbase was already in the business of providing incorporation services. [Urbanchuk Report at 6 ("Firstbase only provided incorporation services for companies in Delaware and Wyoming at the time but planned to expand to all fifty states…")]. In fact, as of April 2022, before the Parties' entered into a formal business relationship, Firstbase was successfully incorporating roughly ███ companies per month. [*Id.*]

A reliable and credible expert opinion must "establish that it is reasonably certain that the damages it seeks are a consequence of the breach, not some other factor." *Zimmer, Inc.* 2018 WL 276324, at *3 (N.D. Ind. Jan. 3, 2018). Mr. Urbanchuk's opinion improperly assumes, in contradiction with the factual record (specifically that Firstbase had been competently performing this service before it met Harbor) that all Firstbase Start revenue was earned as a result of the alleged misappropriation and not some other factor, and is therefore unreliable. Stated differently, by failing to opine on which portions of Firstbase's historical and prospective revenue do and do not "stem from" the alleged misappropriation of Harbor's supposed trade secrets, Mr. Urbanchuk's report is "useless." *Elorac, Inc.* 2017 WL 3592775, at *16 n.6 (N.D. Ill. Aug. 21, 2017).

An additional fatal oversight from Mr. Urbanchuk comes from the fact that he was instructed by counsel that the alleged trade secrets provide economic value by "(1) helping customers maintain accurate records and ensuring legal compliance in fifty states, and (2) providing savings of time and money by being implemented in an online platform that enables the automation of tasks that cannot be efficiently done manually." [Urbanchuk Report at 4]. But despite this instruction from counsel, which limits the benefit of the trade secret to efficiency and accuracy, Mr. Urbanchuk again assumes, without any factual basis that Firstbase could not perform the Start or Agent services **at all**.

Finally, to further compound Mr. Urbanchuk's egregiously incorrect analysis, he cites in his report a quote from a Firstbase witness that, "███████ percent of Firstbase Agent clients come from Firstbase Start." [Urbanchuk Report at 12]. Therefore, in addition to Mr. Urbanchuk's blatantly incorrect assumptions, he cites and then ignores the fact that the service that Firstbase performed prior to its relationship with Harbor, incorporations, is the service that drives Firstbase's revenue. Mr. Urbanchuk's ultimate conclusion that Firstbase should be disgorged of approximately $██████ has essentially no basis in fact, and came as a result of a completely unhelpful analysis whereby he constructed a revenue projection and used it as a perfect proxy for ill-gotten gains. Compound this all with the fact that generally how to perform incorporation and registered agent services are a function of state law, and by definition public, Mr. Urbanchuk's analysis will confuse, not aid the trier of fact.

> **ii.** Mr. Urbanchuk Attempts to Skirt the Plain Language of DTSA and PUTSA requiring him to Link Damages and Causation by Conflating Causation and Apportionment.

Mr. Urbanchuk seems to implicitly acknowledge the causality issue in his penultimate paragraph, where he tries to skirt the issue by conflating causation with apportionment:

> Apportionment is the process of determining the portion of a defendant's profits attributable to the alleged misconduct versus other elements, including, for example, other intellectual property, product features, reputation, etc.

> Defendant has not produced the data necessary for me to conduct an apportionment analysis. Counsel for Plaintiff has advised that it is Defendant's burden to establish apportionment to the extent appropriate. **My analysis therefore presumes that all articulated trade secrets have been misappropriated and are being used in connection with all Registered Agent and Start products referenced herein.**

Urbanchuk Report at 25 (emphasis added).

While Mr. Urbanchuk certainly does not explain this in his report, the concepts of apportionment and causation are distinct. Both the DTSA and PUTSA require that unjust enrichment be "**caused by**" the alleged misappropriation, *i.e.* that the profits to be disgorged were actually the ones that were ill-gotten as a result of the Defendant's tortious behavior. [Urbanchuk Report at 14 (citing 18 U.S.C. § 1836(b)(3)(B) and 12 Pa. C.S.A. § 5304(a))]. The concept of apportionment derives from patent law and is used to determine the proper profits to be awarded when a patented component is used in conjunction with other non-patented items to offer a product for sale. However, even if the apportionment doctrine applies here (something that is less-than-clear and completely unsupported in the Urbanchuk Report), the invocation of the doctrine does not relieve Harbor of its burden to show that Firstbase's alleged misappropriation – and not some other factor such as lawful competition or components of Firstbase's platform that pre-dated its relationship with Harbor – *caused* the supposed unjust enrichment.

Several cases from Seventh Circuit underpin the important distinction between causation (i.e. a proper and credible expert report) and apportionment, all of which comport with black-letter law that a plaintiff has the burden to prove damages. For example, in *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410 (7th Cir. 1992) (Posner, J.), plaintiff's damages expert erroneously measured lost profit damages in a trade secret action by simply comparing total revenue for two different years, the exact kind of conclusory analysis Mr. Urbanchuk embarked upon here. The court there held that the expert erred because he merely "ascribed the *entire* difference between these revenue streams [] to [defendant's] misconduct, and none to [defendant's] lawful competition." *Id.* at 415. The Court emphatically discredited the expert's "joke" of an analysis, holding that "[t]he expert should have tried to separate the damages that

17

resulted from the lawful entry of a powerful competitor [] from the damages that resulted from particular forms of misconduct allegedly committed by that competitor… No such effort was made." *Id.* at 415-416. The Seventh Circuit did not frame its decision as one based on apportionment – the issue was far more simple: "[f]or years we have been saying, without much visible effect, that people who want damages have to prove them, using methodologies that need not be intellectually sophisticated but must not insult the intelligence." *Id.* at 415.

Similarly, in *KW Plastics v. U.S. Can Co.*, 131 F. Supp. 2d 1289, 1295 (M.D. Ala. 2001), the court excluded a damages expert in a trade secrets case, where the expert "assume[d] that each and every penny that [defendant] gained constitutes unjust enrichment." *Id.* at 1295. Once again, this was not a matter of apportionment, but of common-sense; the court stated that it was the expert's "failure to give more than fleeting thought to numerous matters that are relevant to a report on unjust enrichment that renders his testimony unreliable and irrelevant." *Id.* (emphasis omitted). *See also MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1353 (Fed. Cir. 2005) (opinion of damages expert excluded because "expert report did not link a single loss to a specific misconduct and ignored significant factors that might have excluded [the misconduct] as the reason for the losses.")

To illustrate this error, consider what Mr. Urbanchuk should have done in a proper disgorgement analysis. This Court has explained that in the disgorgement context, in order to disgorge the "ill-gotten gains," that which is being disgorged must actually be ill-gotten. *S.E.C. v. McGee*, 895 F. Supp. 2d 669, 688 (E.D. Pa. 2012) (internal citations omitted) (A court may "exercise its equitable power [of disgorgement] only over property causally related to the wrongdoing.").

The Third Circuit has applied a "two-step burden-shifting framework for calculating the size of disgorgement relief." *F.T.C. v. Verity Int'l, Ltd.*, 443 F.3d 48, 67 (2d Cir. 2006). The plaintiff must "show that its calculations *reasonably approximated* the amount of the defendant's unjust gains, after which the burden shifts to the defendants to show those figures were inaccurate." *Id.* (internal quotations omitted). Here, Mr. Urbanchuk failed to present a "reasonable approximation" of damages – his approximation is anything but reasonable given the clear record evidence contradicting many of the assumptions underlying his opinion. Instead, Mr. Urbanchuk tries to pass the burden of disproving damages to defendant. In doing so, Mr. Urbanchuk transforms this two-step inquiry into a one-step inquiry where the burden is solely on the defendant to prove the proper measure of damages. While Mr. Urbanchuk seeks shelter concepts related to apportionment and burden-shifting, he relies on a legally improper instruction from counsel which materially effects the reliability of his analysis, and significant cripples the utility of his analysis to a jury.

In sum, Mr. Urbanchuk's position – that he is at liberty to extend an assumption of liability into an assumption of causation under the guise of a lack of "apportionment" – is contrary to the language of the relevant statutes, express authority enunciating principles of causation, and authority governing disgorgement analyses. Indeed, if correct, his position would be the exception that swallows the general rule that it is plaintiff's burden to establish damages. *See Am. Mach. Movers, Inc. v. Mach. Movers of New Orleans, LLC,* 136 F. Supp. 2d 599, 602 (E.D. La. 2001), aff'd sub nom. *Am. Mach. Movers v. Mach. Movers of New Orleans, LLC,* 34 F. App'x 150 (5th Cir. 2002) (granting summary judgment on trade secret claim "because the plaintiff has failed to provide evidence of any damage resulting from the trade secret infraction"). *See also Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983) ("It was not enough

to show Meirick's gross revenues from the sale of everything he sold, which is all, really that [the expert] did. If General Motors were to steal your copyright and put it in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits."). Mr. Urbanchuk's disgorgement analysis is not reliable and he should be precluded from testifying on this topic.

### C. In the Alternative, the Court should Preclude Mr. Urbanchuk From Testifying to Future Profits because Future Profits are Not Properly Included in an Unjust Enrichment Analysis

DTSA and PUTSA both permit a plaintiff to seek enumerated forms of damages: actual loss caused by the misappropriation, unjust enrichment caused by the misappropriation, and a reasonable royalty for the misappropriating party's unauthorized use or disclosure of a trade secret. 18 U.S.C. § 1836(b)(3)(B); 12 Pa. C.S.A. § 5304(a). "Unjust enrichment" is not defined by either statute. *See* 18 U.S.C. § 1839 (definitions); 12 Pa. C.S.A. § 5302 (same). With respect to its trade secrets claims, Harbor elected to present a damages calculation solely in the form of "disgorgement" based on unjust enrichment. [Urbanchuk Report at 14]. The vast majority of the disgorgement damages calculated by Mr. Urbanchuk – specifically $▮▮▮▮▮ of the total of $▮▮▮▮ – are comprised of Firstbase's "prospective profits" from August 1, 2023 to March 28, 2027. [Urbanchuk Report at 19 (Table 7), 21].

District Courts within the Third Circuit, and in several other jurisdictions, have held that a plaintiff seeking unjust enrichment is not entitled to disgorgement of a defendant's hypothetical future profits. The District of Delaware very recently excluded a damages expert's analysis in a trade secrets case, and in so doing explained that "[t]ypically, as to an unjust enrichment claim, only the defendant's actual profits can be used as a measure of damages in cases where profits can be proved, and the defendant is normally not assessed damages on wholly speculative expectations of profits." *FinancialApps, LLC v. Envestnet, Inc.*, No. CV 19-1337-GBW-CJB,

2023 WL 6037242 at *9 (D. Del. Sept. 13, 2023) (internal citation and quotations omitted). Critically, the court further explained that "the essence of an unjust enrichment claim is that one party **has** received money or a benefit at the expense of another." *Id.* (emphasis in original) (citation omitted). Similarly, in a recent trade secrets case, the Southern District of New York excluded the portion of a damages expert's unjust enrichment calculation because "[p]ermitting [plaintiff] to recover for [defendant's] hypothetical future profits under an unjust enrichment theory would contravene [the] well-established definition" of unjust enrichment, which requires that one party "*has* received" a benefit at the expense of another. *Medidata Sols., Inc. v. Veeva Sys.*, Inc., No. 17 CIV. 589 (LGS), 2021 WL 4243309 at *4 (S.D.N.Y. Aug. 25, 2021) (emphasis in original).

A wide array of courts have similarly explained that future profits are not properly included in a calculation of unjust enrichment damages. *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 897-98 (E.D. Wis. 2010) (damages for unjust enrichment claims are not a substitute for breach of contract damages, and "awarding a share of hypothetical future profits as a damages award for unjust enrichment is inappropriate."); *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 536 (5th Cir. 1974) (explaining that in quantifying damages in trade secrets cases "[n]ormally only the defendant's actual profits can be used as a measure of damages in cases where profits can be proved, and the defendant is normally not assessed damages on wholly speculative expectations of profits."); *Froom-Lipman Group, L.L.C. v. Forest City Enterprises, Inc.*, 747 F. Supp. 2d 891, 901-902 (N.D. Ohio 2010) (appropriate measure of unjust enrichment damages does not include "potential future profits") (citing *Media Servs. Grp. v. Bay Cities Commc'ns, Inc.*, 237 F.3d 1326 (11th Cir. 2001)).

The reasoning of the aforementioned courts are sound and should be followed here, especially in light of Pennsylvania's definition of unjust enrichment.    As the court in *FinancialApps* pointed out, in determining the proper range of unjust enrichment damages, a court should focus on a definition's use of the past tense – e.g., that a party "*has* received money or a benefit at the expense of another." *FinancialApps, LLC*, 2023 WL 6037242 at *9 (D. Del. Sept. 13, 2023) (emphasis added). Recent Third Circuit authority confirms that under Pennsylvania law, unjust enrichment damages are also focused on past – and not future – benefits conferred on a defendant. "Unjust enrichment damages are indeed a measure of the 'benefit conferred' upon the defendant." *PPG Indus. Inc v. Jiangsu Tie Mao Glass Co. Ltd*, 47 F.4th 156, 163 (3d Cir. 2022). The court in that case clarified different forms which unjust enrichment damages could take – including "a profit that was realized" or a "cost that was avoided." *Id.* at 162. Each of the Third Circuit's examples were rooted in the past tense, and demonstrated backwards-looking damages – the focus is properly on the benefit *conferred*. The Third Circuit's understanding comports with the holdings in the many jurisdictions with similar definitions of unjust enrichment, which held that prospective future profits are an inappropriate measure of unjust enrichment damages.

In the event the Court does not outright exclude testimony about Mr. Urbanchuk's disgorgement analysis, it should nevertheless exclude the portions of Mr. Urbanchuk's Report regarding the future profits.

**D.    In the Alternative, Mr. Urbanchuk Should be Precluded from Testifying Before the Jury on the issue of Disgorgement.**

If Urbanchuk is not entirely precluded from testifying to Harbor's disgorgement damages, the Court should preclude him from testifying regarding disgorgement before the jury

because the determination of disgorgement damages is an equitable question for the Court to decide.

In *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304 (Fed. Cir. 2018), the Federal Circuit – after undertaking a rigorous and fulsome Seventh Amendment analysis – held that a plaintiff had "no right to a jury decision on its request for disgorgement of [defendant's] profits as a remedy for trade secret misappropriation." *Id.* at 1326. In considering whether the Seventh Amendment afforded the plaintiff the right to a jury determination on disgorgement damages, the Court posed the relevant question as whether "disgorgement of the defendant's profits was [] available at law [in 1791] for the kind of wrong at issue here," and that if disgorgement was *not* historically available, then plaintiff "has no constitutional right to a jury to decide the disgorgement question." *Id.* at 1320. The court concluded that in cases where disgorgement damages bear no relationship to a plaintiff's alleged lost profits or a reasonable royalty, disgorgement is an equitable remedy for which there is entitlement to a jury. *Id.* at 1321-22. The District of Delaware recently reached the same conclusion in *Shure Inc. v. ClearOne, Inc.*, No. CV 19-1343-RGA, 2021 WL 4991083 (D. Del. Oct. 27, 2021). The court there followed the Federal Circuit's guidance and granted the defendant's request for a bench trial on the issue of disgorgement, holding that "disgorgement is an equitable remedy." *Id.*

The *Texas Advanced* Court acknowledged that in some cases, disgorgement of a defendant's profits is an approximation of, or "good evidence of damages in the form of the plaintiff's losses or of a reasonable royalty for use of the secret," and in those cases, disgorgement may be properly characterized as legal, rather than equitable relief giving rise to a jury right. *Id.* Yet the Court there held that "this is not such a case… [plaintiff] sought

23

disgorgement of [defendant's] profits *as such*, not based on any evidence or argument that such profits soundly measured, and hence were a case-specific proxy for, [plaintiff's] losses or a reasonable royalty. *Id.* at 1320 (emphasis added). In so holding, the court specifically noted, among other things, that plaintiff had dropped its claim for lost profits by the time the case went to trial, and the expert characterized its request as one for "all of [defendant's] profits without qualification as to that figure's relationship to any other measure." *Id.* at 1320-21.

*Texas Advanced* is directly on point and its reasoning should be applied to the instant case. Harbor seeks disgorgement of Firstbase revenue "as such" and has not attempted to construe those profits as concomitant with Harbor's losses. First, the Urbanchuk Report explicitly states that "I did not quantify the Plaintiff's monetary relief by reference to a lost profits ore reasonable royalty methodology." [Urbanchuk Report at 14]. Nowhere in the Report does Mr. Urbanchuk allude to any allegation that Harbor suffered actual losses, and therefore it is inconceivable that Firstbase's profits are a "case-specific proxy" for Harbor's losses or a reasonable royalty. *Texas Advanced*, 905 F.3d at 1320. Second, just like in that case, Harbor also dropped its "lost profits" claim before trial. In his first Report dated August 7, 2023, Mr. Urbanchuk stated that he "quantified the monetary relief resulting from the Misappropriation of Trade Secrets based on (1) the Plaintiff's lost profits and (2) disgorgement of the Defendant's profits." [Urbanchuk August 7 Report at 3]. Mr. Urbanchuk also stated in the August 7th Report that he lacked sufficient data to calculate lost profits and withheld his lost profit analysis for a later time. [*Id.*].  As previously stated, when the updated Urbanchuk Report was served on September 26, 2023, Mr. Urbanchuk expressly explained that he did not conduct a lost profits or reasonable royalty analysis. [*Id.* at 14.]

It is apparent then that Harbor's disgorgement claim is not a "proxy" for any alleged actual losses or a reasonable royalty. As such, Harbor's claim for Firstbase's profits is an equitable remedy, and the proper amount of disgorgement damages must be tried before the Court, and not a jury.

**E.    The Only Remaining Expert Damages Opinions Should be Excluded Because they Involve only Basic Arithmetic and thus do not Offer Specialized Knowledge and Would not Help the Trier of Fact.**

If the Court determines that, on any of the grounds propounded above, Mr. Urbanchuk should be precluded from offering expert testimony regarding disgorgement damages, the Court should entirely preclude Mr. Urbanchuk because the only remaining damages calculation is a matter of basic addition and multiplication, does not involve technical or specialized knowledge, and would not be helpful to the trier of fact.

Under Rule 702 expert testimony is permitted when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact." Fed. R. Evid. 702. The Third Circuit has explained that "[t]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. Wadley*, No. 19-2931, 2022 WL 1011693, at *4 (3d Cir. Apr. 5, 2022) (citing Fed. R. Evid. 701 advisory committee note). In a recent decision, the District of Delaware excluded an expert whose report consisted only of "adding and subtracting expenses" with "no complicated extrapolations." *Allscripts Healthcare, LLC v. Andor Health, LLC*, No. CV 21-704-MAK, 2022 WL 3021560 at *5 (D. Del. July 29, 2022). Finally, The Tenth Circuit has held that a fact witness did not offer improper expert testimony, on the basis that "[a] mathematical calculation well within the ability of anyone with a grade-school education is, in our opinion, more aptly

characterized as a lay opinion under Fed.R.Evid. 701." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005).

Here, the opinions Mr. Urbanchuk has rendered in his expert report regarding the Breach Claims do not involve technical or specialized knowledge and would not help a jury. Mr. Urbanchuk's opinions on the Breach Claims do not apply "reasoning which can be mastered only by specialists in the field," and are more akin to "[a] mathematical calculation well within the ability of anyone with a grade-school education." The total amount for the Breach Claims was calculated by Mr. Urbanchuk based on two components: "Unpaid Invoices" and "Guaranteed Minimums." [Urbanchuk Report at 19]. First, Mr. Urbanchuk's calculation of the "Unpaid Invoices" was reached quite literally by summing two numbers on one-page, non-itemized invoices sent to Firstbase by Harbor. [*Id.* at 10, n. 41]. And second, in calculating the "Guaranteed Minimums" purportedly due to Harbor under the Partnership Agreement, Mr. Urbanchuk used a limited number of documents (e.g. invoices and an addendum to the Partnership Agreement) in conjunction with basic addition, subtraction, and multiplication to reach his damages total of $██████. [Urbanchuk Report at 17-19].[4] The invoices Mr. Urbanchuk reviewed were neither industry-specific nor complicated in any manner and did not require any reasoning specific to an expert in the field.

The simple mathematical calculations used by Mr. Urbanchuk, standing alone, are not a proper basis for expert testimony as they do not set forth any "specialized knowledge" and are not helpful to the trier of fact. Therefore, if the Court determines that Mr. Urbanchuk should be

---

[4] While the Eastern District of Pennsylvania has rejected a similar argument in the past, those cases involved an expert's "present[ation of] a **vast quantity** of calculations derived from disparate sources" and the Eastern District has likewise stated that simplistic methodology "*may*" satisfy Rule 702. *Total Control, Inc. v. Danaher Corp.*, 338 F. Supp. 2d 566, 569–70 (E.D. Pa. 2004); *Jacoby Donner, P.C. v. Aristone Realty Cap.*, LLC, No. CV 17-2206, 2020 WL 5095499, at *20 (E.D. Pa. Aug. 28, 2020). Defendants contend that Mr. Urbanchuk's expert testimony is distinguishable as it does not involve a "vast quantity" of calculations, but rather was comprised of basic math in reviewing a small number of uncomplicated documents.

precluded from testifying regarding the alleged disgorgement damages, this Court should preclude his testimony *in toto.*

## VI.    CONCLUSION

For the foregoing reasons, Mr. Urbanchuk's Expert Report is unreliable and speculative and/or its probative value is significantly outweighed by a danger of prejudicing the jury. Therefore, Firstbase respectfully requests that this court:

(1) Exclude Mr. Urbanchuk from testifying to Harbor's alleged disgorgement damages and strike the related portions of the Urbanchuk Report.

(2) Exclude Mr. Urbanchuk from testifying to Harbor's damages on the Breach Claims and strike the related portions of the Urbanchuk Report.

(3) Preclude Mr. Urbanchuk from testifying before the jury on disgorgement even if his testimony is not entirely precluded, because disgorgement is an equitable question for the Court.

Dated: November 7, 2023                            Respectfully Submitted,

**DILWORTH PAXSON LLP**

/s/*James J. Rodgers*
James J. Rodgers (PA Bar # 21635)
*jrodgers@dilworthlaw.com*
David A. Rodkey (PA Bar# 325698)
drodkey@dilworthlaw.com
Matthew T. Gardella (PA Bar #331833)
mgardella@dilworthlaw.com
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Tel.: +1 215 575-7143

Christine Hanley (*admitted PHV*)
*chanley@chanleylaw.com*
2041A NW 60th Street
Seattle, WA 98107
Tel.: +1 304-606-3705

*Attorneys for FIRSTBASE.IO, INC.*